# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DERRICK D. MCGREGORY, SR.,**

    **Plaintiff,**

v.                          Case No. 18-CV-25

**THOMAS OZELIE,** *et al.*,

    **Defendants.**

## ORDER

Plaintiff Derrick D. McGregory filed a lawsuit under 42 U.S.C. § 1983, alleging that the defendants violated his civil rights. (ECF Nos. 1, 19, 30.) The court screened the complaint and allowed McGregory to proceed with a claim that Milwaukee Police Officers Thomas Ozelie and Allan Tenhaken used excessive force on May 17, 2017. (*See* ECF No. 5.) On July 23, 2018, the court allowed McGregory to add a third defendant, Sergeant Allen Perry, to this case. (ECF No. 29.) On McGregory's request, the court dismissed Sergeant Perry from this lawsuit on December 14, 2018. (ECF No. 71.) This matter comes before the court on the parties' cross-motions for summary judgment. (ECF Nos. 48 and 56.)

# I. THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On October 11, 2018, McGregory, who was *pro se* at the time, filed a one page "motion for summary judgment." (ECF No. 48.) McGregory didn't file a brief in support of his motion, nor did he submit proposed findings of fact, as required by Civil Local Rules. *See* Civ. L. R. 56(b) ("Motions for summary judgment must comply with Fed. R. Civ. P. 56 and Civil L. R. 7;") *see also* Civ. L. R. 7(d) ("Failure to file either a supporting memorandum or other papers…is sufficient cause for the Court to deny the motion.") Two months later, McGregory retained counsel. (*See* ECF No. 68.) His counsel did not seek leave to refile the motion in compliance with the local rules. Because McGregory's summary judgment motion does not comply with this court's local rules, it will be denied.

# II. THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The following facts are undisputed. On May 17, 2017, Officers Ozelie and Tenhaken were on bicycle patrol in Milwaukee District 3. (ECF No. 74-5, ¶ 4.) They were familiar with the people and activity in District 3 because they'd patrolled the area in the past. (*Id.*, ¶¶ 7-9.) According to Officer Tenhaken, the 800 block of 28th street is an "open-air drug market" known for "mobile drug dealing." (ECF No. 60, ¶¶ 5-6.) Street dealers often loiter in the area or arrange meetings nearby to sell drugs. (*Id.*).

At around 4:28 p.m., Officers Ozelie and Tenhaken conducted a "field interview" of Samuel Hayden on the front porch of 846 N. 28th Street. (ECF No. 74-5, ¶ 10.) They

suspected that Hayden was loitering in the area to sell drugs. (*Id.*, ¶ 13.) The officers' body camera videos (ECF Nos. 62-1 and 62-2) show that they were on their bicycles on the sidewalk and Hayden was on the porch of 846 N. 28th Street. (*Id.*) Although McGregory was also on the porch, he was not the subject of the field interview. (*Id.*; *see also* ECF No. 74-2, ¶¶ 3-4.) Officer Ozelie recognized McGregory based on multiple interactions in the past, including an arrest for drugs the month before. (ECF No. 58, ¶ 12.)

About six minutes into the field interview, several children approached Officer Ozelie on the sidewalk to ask a question. (ECF No. 62-1 at 5:55) As Officer Ozelie spoke to the children, Hayden began to walk into the apartment building through a clear exterior door. (*Id.* at 6:04-6:10.) Officer Ozelie followed Hayden up the porch. (*Id.* at 6:11-6:15.) Before Officer Ozelie reached Hayden, McGregory also walked to the exterior door of the building. (ECF No. 74-5, ¶ 16.) McGregory placed himself between Hayden and Officer Ozelie. (*Id.*, ¶ 17.) McGregory then walked back out of the building and attempted to close the door behind him. (ECF No. 62-1 at 6:13.) The parties dispute what happened next.

According to Officer Ozelie, he smelled marijuana coming from inside the building, so he grabbed the door to prevent McGregory from closing it. (ECF No. 58, ¶¶ 18-20.) The weight of McGregory's body was pressed against the door, closing it on Officer Ozelie's hand. (*Id.*, ¶ 21.) Although Officer Ozelie repeatedly yelled that his

3

hand and fingers were caught in the door, McGregory continued to forcefully push the door closed on his fingers. (*Id.*, ¶¶ 22-24.) Officer Ozelie used several "knee strikes" and "focus strikes" to stop McGregory from pushing the door closed on his hands. (*Id.*, ¶¶ 26-27.) Officer Tenhaken arrived to help Officer Ozelie. (*Id.*, ¶ 30.) Once Officer Ozelie freed his hands from the door, he and Officer Tenhaken directed McGregory to the ground and did not use any more strikes. (*Id.*, ¶¶ 28-33.) McGregory resisted the entire time, and it was difficult to secure handcuffs on him. (*Id.*)

According to McGregory, once Officer Ozelie stated that his hand was in the door, he said "sorry" and tried to move backwards. (ECF No. 74-2, ¶ 11.) McGregory states that he attempted to open the door, but Officer Ozelie prevented it by pushing McGregory into a corner and hitting him with his fists and knees. (*Id.*, ¶¶ 12-23.) When Officer Tenhaken arrived, he assisted in pushing McGregory into the corner. (*Id.*, ¶ 24.) Officer Tenhaken then slammed McGregory into the ground and smashed his head into the pavement even though McGregory was already face-down on the ground. (*Id.*, ¶¶ 25-26.) McGregory states that he was not resisting but rather had doubled over in pain, blocking blows to his body. (*Id.*, ¶ 23.)

After the altercation, Officer Tenhaken entered the building and found a digital scale, small plastic bags, scissors, and a green leafy substance inside an open mailbox to apartment #306, an apartment that McGregory often stayed at with his girlfriend. (ECF No. 74-5, ¶¶ 39-40.)

**Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

**Analysis**

A claim that a law enforcement officer used excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *Avina v. Bohlen*, 882 F.3d 674, 678 (7th Cir. 2018) (citing *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010)). "Whether a police officer used excessive force is analyzed from the perspective of a reasonable officer under the circumstances, rather than examining the officer's actions in hindsight." *Id*. (quoting *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). The reasonableness of an officer's actions must be determined by examining the "specific circumstances of the arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Cyrus*, 624 F.3d at 861–62 (quoting *Graham v. Connor*, 490 U.S. 386, 396, (1989)).

The defendants seek summary judgment based on three videos of the incident: Ozelie's body camera video, Tenhaken's body camera video, and a bystander's cell phone video. (*See* ECF Nos. 62-1. 62-2, and 62-3.) The defendants argue that the videos clearly show that their use of "knee strikes" and "focus strikes" was reasonable given that McGregory shut the door on Ozelie's hand and was actively resisting. (ECF No. 57 at 10-12.) McGregory, on the other hand, asserts that he was not resisting, that the officers used gratuitous kicks and punches, and that they slammed his head into the

6

pavement even after he was on the ground. (ECF No. 74-1 at 6; *see also* ECF No. 74-2, ¶¶ 11-23.)

The court agrees that the videos clearly show Officer Ozelie's hand in the door. However, neither of the body camera videos show the amount of force the defendants used on McGregory during the altercation. It's possible that the defendants only used standard, police sanctioned, "knee strikes" and "focus strikes," but the body camera videos are unfocused and blurry. It's also possible that the defendants gratuitously kicked and punched McGregory, as he states in his declaration. Further, although the bystander's cellphone video shows that the defendants used only a handful of knee strikes and focus strikes as they wrestled McGregory to the ground, the video is incomplete. It's unclear what happened before and after the two-minute timeframe when the video was captured. McGregory notes that the defendants slammed his head into the pavement after he was already on the ground, and it is the jury's role to consider disputes of fact. Viewing the videotapes in the light most favorable to McGregory, a reasonable jury could find for him.

The defendants also assert that they are entitled to qualified immunity because "the Seventh Circuit has repeatedly held that the use of force against an actively resisting suspect either does not violate clearly established law or is constitutionally reasonable." (ECF No. 57 at 19.) They reiterate that videotape evidence demonstrates that McGregory continuously resisted arrest during the defendants' attempts to remove

7

him from the doorway and that the officers ceased their use of force once McGregory was subdued and handcuffed. (*Id*.) As discussed above, the videos from the defendants' body cameras are unclear, and the video from the bystander's cell phone does not capture the entire altercation. Further, McGregory identifies several cases showing that it was well established at the time of the events that police officers could not knee, punch, or slam an individual's head into the pavement without provocation. (*See* ECF No. 74-1 at 6-7.) Therefore, the court will deny the defendants' motion for summary judgment.

The court notes that McGregory cannot change the scope of the case at this point in the litigation. In his briefing materials McGregory appeared to assert a new Fourth Amendment search and seizure claim. (*See* ECF No. 74-1 at 2-5.) And on June 3, 2019, McGregory filed a motion to add the City of Milwaukee as a defendant. (ECF No. 82). The court will deny both requests given that he had ample opportunity to pursue these claims when he filed his three amended complaints.

III. CONCLUSION

**IT IS HEREBY ORDERED** that McGregory's motion for summary judgment (ECF No. 48) is **DENIED;**

**IT IS ALSO ORDERED** that the defendants' motion for summary judgment (ECF No. 56) is **DENIED;** and

**IT IS FURTHER ORDERED** that McGregory's motion to add party (ECF No. 82) is **DENIED**.

Dated at Milwaukee, Wisconsin this 10th day of June, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge